

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 27, 2022

**BY CM/ECF**
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. William Fernando Diaz Hernandez*, 21 Cr. 369 (JSR)

Dear Judge Rakoff:

      The Government respectfully submits this letter in advance of the sentencing of defendant William Fernando Diaz Hernandez, which is currently scheduled for May 3, 2022 at 2:30 p.m. For the reasons set forth below, the Government respectfully submits that a sentence of 87 to 108 months' imprisonment, which is within the Stipulated Guidelines Range, is necessary to serve the purposes of sentencing.

## I.  OFFENSE CONDUCT AND CRIMINAL HISTORY

### A.  Offense Conduct

      On December 15, 2020, in connection with an investigation into drug-trafficking occurring in the Bronx, New York, agents conducted a surveillance and observed an individual, who was later identified as defendant William Fernando Diaz Hernandez, sitting in the front passenger seat of a particular vehicle. Presentence Investigation Report ("PSR") ¶¶ 8-14. The driver of this vehicle was later identified as co-defendant Johanky De Luna-Almanzar.

      Diaz Hernandez and De Luna-Almanzar were observed driving to a particular location and parking. Moments later, another vehicle arrived and parked directly behind Diaz Hernandez and De Luna-Almanzar. The driver of the second vehicle ("CC-1") exited his vehicle and entered the rear passenger side of Diaz Hernandez and De Luna-Almanzar's vehicle. Diaz Hernandez, De Luna-Almanzar, and CC-1 remained inside the vehicle for approximately 15 minutes before they exited the vehicle and entered a nearby apartment building. CC-1 exited the apartment building a few moments later and left the area.

      Agents subsequently entered the apartment building, where they encountered Diaz Hernandez and De Luna-Almanzar in the lobby of the building. Diaz Hernandez informed agents that he lived in the apartment building, and he admitted that there he stored a firearm and a large amount of money inside his apartment. Diaz Hernandez then provided agents with verbal consent to search his apartment.

Agents searched Diaz Hernandez's apartment and recovered a plastic-wrapped powdery substances inside a cereal box, which was later determined to be cocaine. When confronted over this discovery, Diaz Hernandez admitted that there was an additional 3 kilograms of cocaine hidden inside a light fixture inside the apartment. In total, agents recovered 6.5 kilograms of cocaine from inside the apartment. Agents also recovered from inside the apartment $300,443 in cash stored inside a backpack. Finally, agents recovered a firearm and ammunition, which were recovered from underneath a mattress. The firearm and ammunition are depicted below:



*See* Complaint ¶ 5(h).

After being arrested, Diaz Hernandez was advised of his *Miranda* rights and agreed to speak with law enforcement officers. Diaz Hernandez informed agents that the substances recovered from inside his apartment were cocaine. Diaz Hernandez also informed agents that CC-1 had supplied him with the cocaine. Diaz Hernandez stated that he purchased the firearm a couple weeks earlier for approximately $1,200.

After being arrested, De Luna-Almanzar was also advised of his *Miranda* rights and agreed to speak with law enforcement officers. De Luna-Almanzar stated that CC-1 had provided Diaz Hernandez with cocaine earlier that same day. De Luna-Almanzar informed agents that he had stored a firearm for Diaz Hernandez for a time before returning the firearm to Diaz Hernandez. De

Luna-Almanzar then provided agents with his consent to search the contents of his cellular telephone. Agents then observed several photographs of De Luna-Almanzar displaying large quantities of cash. Several of these pictures of De Luna-Almanzar were taken inside of Diaz Hernandez's apartment.



## II. CHARGE, GUILTY PLEA, AND APPLICABLE GUIDELINES RANGE

On December 16, 2020, the defendant and De Luna-Almanzar were charged by Complaint with one count of conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The defendant was presented the same day and ordered detained.

On June 1, 2021, the defendant waived indictment and pleaded not guilty to Information 21 Cr. 369 charging the same narcotics conspiracy count included in the Complaint. On December 3, 2021, the defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") to the lesser-included offense of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). That lesser-included offense carries a mandatory minimum term of imprisonment of 5 years and a maximum term of 40 years; mandatory minimum term of supervised release of four years and a maximum term of life; a maximum fine of $5,000,000; and a $100 mandatory special assessment.

Based on the drug quantity, his base offense level is 30. After a two-level increase for possessing a dangerous weapon in furtherance of the offense and a three-level decrease for acceptance of responsibility, the defendant's total offense level is 29. Plea Agreement ¶ 2; PSR ¶¶ 4. The defendant is in Criminal History Category I. Plea Agreement ¶ 2; PSR ¶¶ 4. Accordingly, the applicable Guidelines Range—as calculated in the PSR and as stipulated by the parties in the Plea Agreement—is 87 to 108 months' imprisonment (the "Stipulated Guidelines Range"). Plea Agreement at 3; PSR ¶¶ 4, 62.

In the Plea Agreement, the defendant admitted to the forfeiture allegation in Count One of the Information. Plea Agreement at 2. On the day of his guilty plea, the defendant executed a consent preliminary order of forfeiture relinquishing any right or title to $300,443 seized from his apartment on the day of his arrest.

De Luna-Almanzar, who was charged in the same Complaint as Diaz Hernandez, pleaded guilty to one count of narcotics conspiracy in Information 21 Cr. 303, which is before Chief Judge Swain. De Luna-Almanzar is scheduled to be sentenced on May 9, 2022.

### III. DISCUSSION

#### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

#### B. The Court Should Impose a Sentence of 87 to 108 Months' Imprisonment

In this case, the nature and circumstances of the defendant's offense, and the need to promote respect for the law, to provide just punishment, and to deter future criminal conduct all weigh heavily in favor of a sentence of 87 to 108 months' imprisonment.

*First*, the defendant's narcotics offense was serious, and a sentence of 87 to 108 months' imprisonment is necessary to reflect the seriousness of the offense and to provide just punishment. The defendant was responsible for receiving more than 6.5 kilograms of cocaine, which constitutes thousands of individual doses. Far from a victimless crime, cocaine traffickers pray on the most vulnerable in society for no reason other than greed and personal profit. While the defendant was not a high-ranking member of this drug conspiracy, his role as a distributor was an essential one. In New York and throughout the country, heroin trafficking has resulted in shattered families, life-long addiction, and countless, needless fatalities.

*Second*, a substantial sentence is also necessary to deter others from similar conduct and to promote respect for the rule of law. First, regarding the need to deter narcotics trafficking, a substantial term of imprisonment is necessary because those who engage in the trafficking of dangerous substances must understand that their actions have a real and adverse impact on our communities, and those who perpetuate the drug problem in this country will be punished appropriately.

Moreover, a significant sentence is also necessary to afford adequate deterrence to others in the community who may unlawfully possess firearms in furtherance of their narcotics trafficking activity. There can be no stronger need for general deterrence than to send the message that unlawful gun possession in New York City will not be tolerated. In 2020, the year of the defendant's unlawful possession, New York City saw the highest number of shootings in fourteen years. *See Why Are Shootings Up In New York City? We Asked Four People On The Front Lines*, The City (Dec. 21, 2020).[1] Even mere possession of a gun "greatly increases one's ability to inflict harm on others and therefore involves some risk of violence. . . . Without possession of guns such persons are far less capable of committing acts of violence." *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000); *see, e.g., United States v. Levy*, No. 16 Cr. 270, 2017 WL 4381398, at *5 (E.D.N.Y. Aug. 9, 2017) ("[A] substantial sentence in a case involving guns—regardless of the motive of the possessor of the weapon—is the primary means by which the court can communicate to the public that firearms are inimical to the safety of persons living in a densely-populated urban community, and that illegal possession will be severely punished." (citations omitted)). The need for general deterrence weighs strongly in favor of a significant term of imprisonment between 87 to 108 months.

Notwithstanding the above, the Government acknowledges there are mitigating factors that call for leniency. The defendant had a challenging upbringing. PSR ¶¶ 38-40. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ After the defendant serves a term of imprisonment, he will be removed from the United States. PSR ¶ 42. These facts may be considered under § 3553(a) and may warrant a lesser term of imprisonment.

---

[1] https://www.thecity.nyc/2020/12/21/22189682/why-are-shootings-up-in-new-york-city-in-2020-nypd.

## IV. CONCLUSION

For the reasons set forth above, the Court should impose a sentence between 87 and 108 months' imprisonment, which would be sufficient but not greater than necessary to achieve the legitimate ends of sentencing.[2]

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney

by: _____
                Kedar S. Bhatia
                Assistant United States Attorney
                (212) 637-2465

cc:    James A. Kilduff, Esq.

---

[2] With permission from the Court, the Government is filing this letter on the public docket with redactions.